We'll move on to our final argument for the day, which is Anderson v. Boyne USA, case number 23-35191. There's a button somewhere. There we go. Thank you. Okay. May it please the Court. Ian McIntosh for Defendant Boyne USA, which I may inadvertently refer to today as Big Sky. The question, the primary question before the Court today is whether this Court has jurisdiction over an order that is unlimited in time and makes Boyne and Big Sky continue to do the very things for which they are being sued. This Court clearly has jurisdiction over this order, first of all, pursuant to the plain language of 28 U.S.C. 1292A. That statute states... It sure looks like a management order under Rule 24D. Why isn't it? Because it affirmatively requires Boyne to continue to rent out plaintiff's units, and it also protects... During a specified period. Incorrect. The order is unlimited in time. The Court orally extended it. What's the status of it? Is it still in effect? It is. On April 12, 2023, this year, the Court orally extended the order. The Court indicated that he would issue an order indicating how much longer the order would be in place and the reasons for the extension, but that order was never issued. So it's an open-ended extension in April, and it's still in effect? Correct. But it's only during the pendency of the litigation, correct? That's what the original motion asked for, filed by plaintiffs, yes. So 1292A states that it applies to injunctions. That's the plain language of the statute. 1292A does not say it only applies to Rule 65 injunctions. It does not say it does not apply to Rule 23 injunctions. In the very first sentence of plaintiff's motion before the district court, and this is at document 48, page 2, the very first sentence of their motion asked the district court to enter a preliminary injunction. And both of the court's orders are titled Order Regarding Temporary Injunction. And, in fact, plaintiffs have admitted before this court at docket 11, pages 2 and 3, among other places, that the district court issued an injunction. Therefore, pursuant to the plain language of section 1292, this court has jurisdiction. This court also has jurisdiction over the order pursuant to Ninth Circuit case law, in particular the Gaughan case from 1989. And both parties agree that that case applies and that the test in that case applies. And there's a three-part test there to determine whether an order is an injunction. The three-part test is whether it is directed to a party, whether it is enforceable by contempt, and whether it is designed to accord or protect some or all of the substantive relief sought. The parties agree that the first two factors are met, so it is only the third factor that is at issue in this case. And the evidence clearly establishes that the third factor is met. It's met for multiple reasons. First, the third factor of the Gaughan test is met because the order protects the very damages plaintiffs are seeking in this case. Plaintiffs are seeking ongoing tort and punitive damages. So, can I just push back slightly? You said it protects the damages they're seeking. And I think that may be one of the distinctions we're going to be asked to grapple with is that's different than actually awarding relief that the plaintiffs are seeking. Correct. It protects. I should have been more precise, Your Honor. It protects their ability to seek ongoing tort and punitive damages. Right, but it doesn't. Oh, I see. I see. Okay. Yes, because the whole purpose, what Boyne was trying to do here, is end plaintiffs' damages. But even so, I mean, doesn't that just say that, I mean, that that just protects the court's jurisdiction to continue on with the case? No, because we're not arguing even if the rental management agreements are terminated today, we wouldn't be able to say you no longer have jurisdiction over the case. It would still be able to recover past damages that you just can't. I mean, for example, under the court's order, Boyne is required, if it gets a reservation and a plaintiff wants to rent one of the plaintiff's units, Boyne is required to rent it out. And then Boyne can now be sued for that rental because the entire claim in this case is that Boyne isn't renting it for enough money, isn't giving the owners all of the money that they deserve. So the court is forcing Boyne to continue to do the very things that it is being sued for. So what would happen if the agreements, if the district court hadn't put this in place and the agreements had been terminated? What would happen? I think they claim that they wouldn't be able to rent at all. What does the record show on that? The record shows that each of the three plaintiffs are in a different position. Plaintiff Claggett, there's record evidence that he does not rent his unit at all, so he would not be impacted by the termination of the rental management provision. Plaintiff Anderson is in a building called the Shoshone where third-party rental management is allowed, so Mr. Anderson would be able to use a third-party rental manager to rent his unit if he chose to do so. And then the Earhart plaintiffs own two units within the Summit, which is a hotel condominium. And correct, Boyne would prevent them from renting their units because the declarations of the HOA indicate that you can only use Boyne as the exclusive rental manager. So they would be presumably prevented from renting out their units. That would be the practical implication. If I add to that last point there, is this not a preservation of the status quo? Because the status quo is the last status of the case before the pending controversy. And in this case, the status quo was, what was the status of the parties before the lawsuit was filed? Before the lawsuit was filed, the termination provision could be enacted by either party. What? Boyne could terminate the rental management provision, or in this case, the Earharts. They could terminate the rental management provision. But with this court's order, he took away Boyne's ability to enforce a part of the contract, which is also the exact thing that plaintiffs are seeking in this litigation. That's the second reason that the gone test is met here. And in fact, plaintiffs admitted that the termination provision is at issue in this case, and they admitted that the termination provision goes to the merits of the case. At 3 ER 452, plaintiffs' counsel made the following argument to the district court. Plaintiffs are challenging the entire legality of the rental management agreements. Boyne's argument that it has a contractual right to terminate the plaintiffs' rental management contracts ignores the entire purpose of this case. And the entire point of this case is challenging the fact that Boyne can impose all of these conditions and obligations on the plaintiffs in the first place. Plaintiffs are seeking to have the entire rental management declared illegal and unenforceable. And this court's order, by preventing Boyne from enforcing one part of the order, accomplishes part of what they're seeking in this case. So therefore, undergone, this is an injunctive order. Moreover, if you look at the other side of this, as plaintiffs are going to come up and argue in a minute, they're going to argue that the termination provision does not go to the merits of this case. If it doesn't go to the merits of the case, then the district court didn't have the authority to enter the order at all. And that's what this court held in the L.A. Alliance for Human Rights case and in the Pacific Radiation Oncology case. If it doesn't go to the merits, the court doesn't have the authority to enter this injunction. And third, the third reason this is an injunction, I think I've already addressed this, is because the order is not temporary. As previously indicated, it was originally entered on 223 of this year. On 412, the district court orally extended it, but never said for how long, never provided an order with this reasoning. Are you saying that this order by its own terms extends beyond the pendency of the litigation? I don't read it that way, even including the extensions. I don't know, Your Honor, what the court indicated to the parties. The initial order was during the pendency of the litigation. The initial motion was for the pendency of the litigation. And it was granted. Correct. And what reason do I have to believe that it is intended to go beyond the termination of the litigation? Only because the district court on 412 orally extended the order and has not said how long it would extend for. But I agree with Your Honor. It seems to me that the reasonable inference is that it's going to be the ordinary terms on which it was originally granted. Correct, Your Honor. That's a presumption. I agree with that. I mean, presumably the court will eventually rule on all these issues and rule whether— Which then leads me back to my original point. It seems to me that this is a case management order. Incorrect, Your Honor. This is not a case management order because Rule 23 case management orders go to the conduct of the litigation. This has nothing to do with the conduct of the litigation. And if you look at all of the— But it's maintaining the status quo pending the litigation. I mean, are there a lot of other injunctions or orders that are deemed to be injunctions that don't comply with Rule 65? Does that happen very often? I'm not— Sorry. I mean, normally when you enter an injunction, you have—you know, you've got likelihood of success on the merits. But the district court didn't walk through any of that here, unless I'm mistaken. The district court did in the March 10 order. It did not do so in the 223 order. In the 223 order, the court simply said, Boyne, you are required to continue to rent plaintiff's units. It didn't provide any reasoning. Then on March 10, the court issued a reasoned order in which the court went through the winter factors of a preliminary injunction. It was unclear to me that the district judge thought he was required to do the winter factors, but he used those in determining whether or not to enter the order. Correct. Correct. And in so doing, the district court erred as a matter of law. The district court erred as a matter of law in going through those winter factors and then granting the injunction in this case because plaintiffs made no efforts to meet the winter factors. They consistently said winter does not apply, even though their motion said we are seeking a preliminary injunction. But that's an argument on the merits. Correct. Well, the question is whether or not we have jurisdiction to address the merits. Exactly, which is a de novo review by this court. And, again, plaintiff's motion asked for a preliminary injunction. Rule 65 applies to all injunctions. And then winter says if you are seeking a preliminary injunction, you must meet this four-factor test. So by the plain language of their order, by the plain language of the district court's orders, winter applies and Rule 65 applies. As I recollect, the plaintiffs sought an order under Rule 24D, didn't they? They had a two-part. Their motion was two parts. But they specified Rule 24D, didn't they? 23. I'm sorry. Rule 23D. Their original motion sought two different things. One, it sought to limit Boyne's communications and Boyne's communications with the punitive class. Right. And the district court said no, you're not getting that. Exactly. And unquestionably, Rule 23 applies to that. But then they also sought a preliminary injunction seeking to force Boyne to continue to rent plaintiff's units. And that's exactly what this court ordered. Because I read their papers. They were seeking both under Rule 23D. They were seeking both, but it's unclear what they were seeking. I mean, if you look at their original motion, their original brief, they have two different sections. First of all, where they talk about preliminary injunction cases. For example, they go back to the Bergen case from the Third Circuit in 1962, which is a preliminary injunction case. And then they talk about the communications separately. So there's two different issues there. And Judge Morris, did he reference 23D? He referenced a little teeny bit. He mentioned Rule 23D very, excuse me, Rule 23 in his March 10 order very, very little. I think he mentioned, said Rule 23 once or twice. At the beginning. At the beginning. And then he went through all the winter factors. Correct. But it seems to me that the premise is that he's making his ruling under Rule 23. Regardless of what rule he's making it under, plaintiffs ask for preliminary injunction. And what the court's order does is it forces Boyne to take affirmative action. It says, Boyne, you must continue to rent these units. That is not an injunction that deals with the conduct of litigation. It requires Boyne to take affirmative acts. And, of course, it doesn't even get into the issue of can Boyne now continue to be sued or is the court going to have to jump in and answer questions? But Boyne's being forced to continue to rent these units. Does it have to rent them for a certain amount? Does it have to give them so much money? I mean, all of these little details that the court simply did not address. And in granting this order, the court simply skipped over and didn't require the plaintiffs to meet any of their burden under the injunctive order requirements. He looked at the rule of the winter factors but failed to recognize that under winter, under this court's case law, specifically the Angelotti chiropractic case, it is the plaintiff's burden to establish that they meet the four-part test in winter. And plaintiffs simply failed to do so. And this court made the arguments for them. You're back to the merits. Exactly, Your Honor. The merits. The court is incorrect on the merits. My question is not whether he was right on the merits. My question is whether we have jurisdiction. And this court does have jurisdiction pursuant to the plain language of 1292A, pursuant to Rule 65, and pursuant to winter. I'll reserve the rest of my time. Thank you. Thank you. Good afternoon, Your Honors. May it please the Court. My name is Jeffrey Tierney. I'm here today on behalf of the Plaintiff Appellees, representatives of a recently certified class action composed of owners of condominiums included in a group of condominium hotels at the Big Sky Resort in southwestern Montana. The plaintiffs are challenging the rental management program, various features of it which they contend is part of a scheme to extract money from the owners at the expense of the owners for Boyne's benefit by various mechanisms, including junk fees, mischaracterized elements of revenue. Can we talk about what provision and what authority he acted under? I take it your position is that the order was issued under 23D? It is, Judge Collins. That's one of the first . . . Can you point to me what language in 23D authorizes the kind of order that was issued in this case? I believe it is 23 . . . Excuse me. I have the rule right in front of me. I believe it's 23 . . . I think I've got it here as well. I think it's 23D-1-3. It's the provision that says that the court can issue orders governing the conduct of the parties in counsel. 21C says that the court may impose conditions on the representative parties or on interveners. That's correct. It doesn't say anything about ordering anything to the defendant or governing the defendant's substantive conduct. That's not . . . there's no such language in C. So can you point me to something else in D that would authorize this order? I don't know about in the language of the rule. I believe there's precedent concerning the rule in that fashion. So that you can use 23D to alter the substantive rights and behavior, even on a temporary basis, of the parties, of the defendant. Yes, Your Honor. But, I mean, I'm looking at this, and it . . . A says you can determine the course of the proceedings or prescribe measures to prevent undue repetition or complication in presenting evidence or argument. That's all procedural. B, require to protect class members and fairly conduct the action, giving appropriate notice. That's the Gulf Oil type stuff, and that could reach defendants. C, which I just read, which doesn't talk about defendants. And D talks about pleadings. And E, deal with similar procedural matters, which suggests that everything is about procedure and not substance. So this isn't a source of substantive authority to say you can't cancel agreements or exercise substantive rights. I don't see that in 23D at all. Well, a couple points, Your Honor. First of all, I'm not sure that's an argument that has been made by the opposing parties. Well, you ask the questions. We give the answers. And it's not multiple choice, and I don't have to pick between the two answers put in front of me. I can look at this and read what the law is. I do understand that, Your Honor. I think the particular provision that you pointed to, referring to the representative parties, that was construed by this Court in Wang v. Chinese Daily News. That case had some similarities to this one. I believe Judge Fletcher may be familiar with that decision, having authored the opinion. I don't remember anything. It was a number of years ago. I don't fault you for that. The particular facts of that case, it was a class action under the Fair Labor Standards Act, and it involves some analogous coercive and threatening behavior, including actions by the defendant, terminating employees and class members, threatening termination of employment and other repercussions. The issue is whether or not you're going to issue orders about communications to the class in the Gulf Oil type situation. That is governed by 23. But that's not what was done here. What was done here was an order was done that altered the substantive relationship between the named plaintiffs and the defendant. It has nothing to do with communication to class members or protecting communications to class members. The substantive rights of the parties in the suit were altered on a temporary basis. I don't see how that's not a preliminary injunction. Understood, Your Honor. I would point out that the Wang v. Chinese Daily News case involved more than just a restraint on communications. The Court also held that the district court had authority under the same rule to remedy the issues caused by those problematic communications, including, in the context of that case, invalidating a number of opt-outs that were secured from putative class members. I actually think there were class members. I believe it was certified at that point. So the Court had authority under 23D not only to control communications, but to invalidate agreements and understandings that affected the parties' legal rights and statuses. Did the district court here make a finding of any type of wrongful communications in that kind of sense? I believe the district court did make findings that the actions of Boyne were coercive and improper, not with respect to communications, except insofar as the notice of termination from the rental management program is itself a communication. In that way, I think it's analogous to the fact pattern we see in Wang v. Chinese Daily News. The other observation I would make, Your Honor, that I think is responsive to your question, is that apart from Rule 23D, I believe the Court has inherent authority to grant the same relief, and other courts have done so. We did in our motion invoke both 23D and the Court's inherent authority. Ultimately, the Court chose to rely on 23D, but I believe it's also the law that it's within this Court's power to affirm the right result, even for the wrong reason. And I think it is clear that Judge Morris at the district court level did have inherent authority. We see something similar in the Bergen case from the Third Circuit. That was Bergen drug v. Park Davis. That was an antitrust case brought by a vendor against its supplier, and there was a dispute in that case about whether the Court had the inherent power to interfere with contracts and specifically the freedom to... If Judge Morris did do this under his inherent power, does that change the analysis as to the appealability to the order? I'm not sure I understand the question, Your Honor. I apologize. One of the questions in front of us is whether the order is appealable. If it's a valid order under Rule 23D, I don't think it's appealable. On the other hand, if it's an order entered pursuant to his inherent authority, my question is does that change the appealability analysis? I don't think that it does, Your Honor. Do you have a case law on that? I do not, and I don't think either of the parties addressed that in the briefing, but I think what is intuitive to me is that it would come back to the same analysis about whether the order is of an injunctive character or not, which is the same analysis the Court has undertaken in deciding that Rule 23D orders are generally not appealable. The same would be true of a quasi-injunctive order issued under the Court's inherent authority if it doesn't meet the standards for an injunction that's appealable under 28 U.S.C. 1292a1. Your Honor, if I may take a brief detour, I would like to address the mootness issue that the Court raised with opposing counsel. I take a different view of that situation and the representations about the off-the-record informal extension. I don't believe it's the case that the Court indefinitely extended the order. My understanding is that the Court extended its original order for an additional 60 days. It is our understanding that the order expired some months ago, which is the position we took in our response brief, and I think that the appellant's reply brief at least implicitly concedes that. So you think if you acted inconsistent with the order today that there would be no contempt? I absolutely believe that, Your Honor. I think that order expired by its term some months ago, which creates a mootness problem, and I think that's an illustration of why these kinds of short-term and provisional orders generally are not appealable, because it creates procedural confusion like this. In your answer to me earlier, you relied extensively on this Wang case, which you cited in your brief. Yes, Your Honor. When I pulled it up, it comes up as certiorari grante, judgment vacated, and so this opinion was vacated by the Supreme Court, remanded for further consideration in light of Wal-Mart versus Dukes. Do you have another case? So that's gone. Do you have another case that readopted the holdings of Wang? So that's correct, Your Honor. It was vacated with respect to the certification issues. No, it's just vacated. The Supreme Court doesn't say, you know, it's vacated on one issue. That opinion was vacated, and I don't see anything published that replaces it. Maybe I'm wrong. That's what I'm asking you. If there's a remand opinion that then readopted it, that would solve the problem. I don't believe there is with respect to that case. However, that portion of the case has been subsequently cited by this court on several occasions. So it's now been readopted. Can you tell me that case? Yeah. Glass and Cater and Demigauda are three of the cases that we cited, all of which, to my recollection, cite Wang v. Chinese Daily News, and those were all cases in which this court or the motions panel, more correctly, dismissed Rule 23d orders deeming them not appealable because they were temporary case management orders and not true injunctions. So I think that tracks the analysis of Wang v. Chinese Daily News, which in turn cited with approval the Kleiner case from the Eleventh Circuit, and that, to my knowledge, is the only decision of a high court that has specifically analyzed this question of the standard in order to get relief under 23d versus . . . I just don't know. Glass is unpublished. So what was your next one? I believe all three of those cases are unpublished. Okay. So we have no binding precedent that says all the things you said earlier. My understanding, Your Honor, is that those being post-2007 cases, they are citable as precedent pursuant to the courts' local rules. Right, but they're not binding. So if I disagree with those, I don't have to follow those. I cannot disagree with that, Your Honor. That's true. If I may backtrack to the mootness issue, before I got to Judge Fletcher's question, what I wanted to point out is I think that the appellant's reply brief at page 17 at least implicitly acknowledges this understanding that the court's order was informally extended for 60 days in support of its argument that the issue is not moot because it's capable of repetition yet evading review. They take the position that the court could theoretically impose successive 60 – or, excuse me, extend the order by successive 60-day intervals. But the order's still in effect as we sit here today. Is that true? No, Your Honor. I don't believe so. That's what I was trying to clarify. My understanding is that it was initially issued in February for 60 days. It was then extended for an additional 60 days. In April it was extended. In April. It expired as of June? It has. It would have expired in June. And the court indicated that it may revisit the issue later and consider a more permanent order akin to a preliminary injunction if the facts and circumstances warranted it. But that issue – But this is the reply brief where they say the district court's most recent ruling demonstrates that it is inclined to enjoin Boeing perhaps in successive 60-day intervals for the rest of this litigation. But it doesn't say that it has. That goes to your point, I think. And that has not occurred. In fact, the only thing we have in the record is the order from February, which expired by its terms in April. So – I mean, the oddity there, I guess, would capable of repetition or evading review be – I mean, if the injunction isn't even in effect, do we even have jurisdiction over an injunction? My position is that the court does not have jurisdiction at this point, both because the order was never appealable in the first place, because it is a Rule 23d order and not an injunction, and because it's moot. I don't believe that the capable of repetition yet evading review exception applies. I didn't pay attention. I must have missed it. The mootness question, I was looking through the briefs. Did you – I mean, you don't need to. Mootness is jurisdictional. But did you actually raise this? Because their comment at 17 doesn't actually seem to be – their reply brief doesn't seem to be responding to anything you're saying. I mean, I don't see an argument here that you said, hey, this isn't even in place anymore. So I think that's a manifestation of the unusual procedural posture we've got, because throughout the briefing we were still guessing at what the court might do. We did raise this in our original – Because it was in effect at the time you filed your brief. Correct, Your Honor. So we filed our initial motion to dismiss forecasting this possibility. The appellants responded, well, the court is going to extend the orders. But you didn't file anything. You never filed anything with the court to say, hey, by the way, this is now expired. We seriously considered filing a renewed motion to dismiss, but out of respect for the motions panel's direction that the issue should be – On the other hand, a 28-J letter would have been nice. Understood, Your Honor. But circling back to the – I thought your opponent said that there was some kind of an order entered in April extending it with reasoning to follow. Was that wrong, or what does the record say? It's got to say something one way or the other. It was an off-the-record status conference, Your Honor. I thought the reasoning to follow came in the March order. Thank you, Your Honor. That does clarify things in my mind. There were two orders in March. There was a brief order issued – or excuse me, in February. There was the original order in February issued, I think, the day before the notice of intent to terminate was to come into effect in order to make clear that the termination was not effective, and then the court followed that up with a more detailed, lengthy written order. The 60-day extension that took place in April was not memorialized by any proceeding on the record or a written order. So all we've got is the – Was it an off-the-record status conference? There's no court reporter transcript? There's no – is there a minute order? There may be a minute entry, which I think was attached to our brief. I don't recall how detailed it was. But the only written order we've got is the one from February, which expired by its terms in April. The other point that I wanted to make briefly about the capable of repetition yet evading review exception, I don't think that that applies. My understanding is that – Look, we've got a whole bunch of questions, at least I do, because this has kind of changed my framework on this case. So I think it's probably better that we hear a reply, and then if we have supplemental questions, maybe we need to ask for some supplemental briefing or something from the parties. Okay. So we've got a minute on the clock, Your Honor, if you have additional questions. I'm over a minute. I apologize in that case, then I will sit down. It's okay. We kept you over. No, this is – thank you. All right. Thank you. Thank you. Very briefly, first of all, to address the mootness question, Your Honor is exactly correct. This was an off-the-record status conference on April 12th. The only evidence of it that extended the order, and the only evidence of it I believe is in Docket 81, and what the court said is the order is extended. Plaintiffs in their briefing said it was an extension for 60 days. I do not recall that, and there's no record evidence of that. Well, hold on. Help me understand what you said. When did you file your reply brief? Because you filed your reply brief in – oh, it was still in May. So I'm confused. The district court's most recent ruling demonstrates that it is inclined to enjoin Boeing, perhaps in success of 60 days intervals for the rest of this litigation. That suggests from you in May an understanding that these were 60-day entries. Has anything happened since May? No, except we do have an email, which I'm happy to provide to the court, from plaintiffs' counsel saying that the court extended the 60-day stay at the status conference on April 12th and advised a written order would eventually be issued. Right, but that suggests that it was extended until June. What's happened since June? Is it – okay. Nothing. First of all, where does this 60-day – I have not paid attention to this at all. So where does this 60-day requirement come from? The original order said 60 days. So the original – the February 23rd order said it was in place for 60 days. Then the April 12 extension, and that's where plaintiffs' counsel says it was a 60-day extension. I don't think that's correct. We believe – But you clearly – I don't know about clearly anything right now, but in May you filed your reply brief saying and acknowledging in success of 60-day intervals. So that suggests that you did think it was a 60-day. Does the order say 60 days? There's no order. Oh, he hasn't done anything since April. No. In April he said this – I'm going to call it an injunction – is extended. And he said a written order would be issued, explaining the reasons for the extension. There's been no written order since April. Correct. There is a written order in May which explains the February. There's a written order in March. Sorry. I said May. I meant March. Correct. So I guess if the plaintiffs are right that it's only 60 days, you can cancel the agreement. Right. And that's – you know, if their position is that the order is no longer in place and we can cancel the termination process. Is this the first time you've understood their position to be that? Yes. Yes. And if that was their position, I wish – like you, I wish they would have told us this before we came here and spent all this time and money on this appeal. Well, I'm – trust me, I'm with you. I mean, I know you guys have money. We've got a lot of time at stake here. But that's our job. So I'm more – I had not paid attention to what you said in the reply brief, and you seem to have had this understanding in May. So, I mean, I'm sort of confused is your statement right now that, hey, this is the first we've ever heard of this, because you seem to have said in May that these are successive 60-day intervals. Let me try to be as clear as I can. I don't know. When the court extended the order in April, we agree the court extended the order. I don't know what the court's intent was, whether it was for 60 days or whether it was indefinite. That's my position, Your Honor. I don't know. The court said, and I think both parties agree on this, Judge Morris said that he would issue a written order explaining why and for how long. That written order has never been issued. But back up to that, because I hadn't paid attention to this at all. The March order only extended it. Everybody agrees that the March order was only for 60 days. Sorry, February, but it was supported in a March order. Correct, correct. So that goes to April. April 23rd. And that's what's on appeal to us. Or is the April order still on appeal to us? Okay, so that was the issue in the briefing. So the April order, I mean, it's unquestioned that on April 12th, the court extended the time period for the February 23rd order. The parties agree on that. The only question is how long. And I don't know the answer to that because we don't have an order. All right. So just very briefly, so the Wang case, counsel just cited the Wang case. The Wang case is not analogous because in the Wang case, there were communications at issue, and the court under Rule 23 had authority to stop those communications. But in addition, the employees were fired, and there was never an order saying you must re-employ these people. If there was an order saying you have to bring them back to work, that would be an injunction, and that's exactly what we have here. And as the district court recognized, it is a case from many years ago. It's Alexander v. FedEx. Plaintiff's motion for preliminary injunction asks that the court make FedEx ground, continue the business model for which it is being sued and for which the plaintiffs seek damages. That is not the sort of order Gulf Oil contemplated. That's exactly the situation we have here. And what case is that, Andrew? This is Alexander v. FedEx. It's from the Southern Bend Division of Indiana, 2007. That's exactly what this order does. It forces Boyne to, according to plaintiff's theory, continue committing torts against the plaintiffs. It is an injunction, and this court has jurisdiction. Do we? But it's torts, I guess, that the plaintiff's inviting. That is to say, that's what they're asking for, correct? They're asking that it be continued, yes. So it doesn't sound as though it's wrongdoing against the will of the plaintiffs. I'm sorry, I couldn't. The plaintiffs are asking for it. Yes. It's a little hard for me to accept your argument that the court is ordering you to commit a tort against the plaintiff, but the plaintiff itself has asked for it during the pendency of the litigation. I agree it sounds all right. Anything else? No. Thank you both for your arguments, and the case is submitted, and we're in recess for the day. Thank you. All rise.
judges: FLETCHER, NELSON, COLLINS